## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TILLO INC.; REWARD CLOUD LIMITED | Civil Action No. |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| ROBERT HEFFERNAN; TALLI DIGITAL PAYMENTS, INC. | |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiffs, Tillo Inc. and Reward Cloud Limited (collectively, "Tillo" or "Plaintiffs), by their attorneys, bring this Complaint and demand for jury trial against Defendants Robert Heffernan ("Heffernan") and Talli Digital Payments, Inc. ("Talli") (referred to collectively herein as "Defendants"), and alleges as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      Tillo is global financial services company that provides tools and services to allow businesses to distribute digital gift cards and prepaid cards to their customers/end users.

2.      From May 2023-April 2024 Heffernan was a high-ranking employee of Tillo. While serving in a fiduciary capacity as Vice President and Director of Product at Tillo, Defendant Heffernan was part of Tillo's Senior Leadership Team and was charged with the responsibility of pursuing the expansion of Tillo's product lines and growing its business. Instead of pursuing such business expansion on behalf of Tillo, however, Heffernan took advantage of his access, as a trusted and key employee, to Tillo's "secret sauce"—the proprietary and trade secret processes and models that Tillo has used to become a major player in the

customer incentive industry—and used that information to launch a rival company, Talli, targeting a market segment in the gift card industry into which Heffernan knew Tillo planned to expand.

3.    Not only did Heffernan improperly take and use Tillo's trade secrets to launch Talli, Heffernan did much of the work needed to begin his start-up business while still employed by Tillo and during the days and hours when he was supposed to be working solely for Tillo and its benefit.  In fact, Tillo has discovered that Heffernan had *three* jobs during his time as a Tillo Vice President and Director of Product.  First, he had his employment for Tillo, to which he was contractually obligated to devote his full time and efforts.  Second, at all times during his employment at Tillo, Heffernan was also employed as Director of SingleStep Ventures, a property development and investment firm he founded that invests in and renovates run-down buildings.  Third, Heffernan devoted significant time to the development of Talli, including raising capital and preparing to interview prospective employees, all while still employed at Tillo.  At no time during Heffernan's employment for Tillo was Tillo aware that Heffernan was also working for SingleStep Ventures, nor that he was also secretly working on forming his own start-up company, now called Talli, that would compete against Tillo.

4.    Heffernan breached his contractual obligations to Tillo by secretly splitting his attention to two other businesses when he was contractually bound to devote his full time, attention and efforts to his work at Tillo.  Heffernan also breached his fiduciary duty and duty of loyalty and good faith owed to Tillo by launching another business, which is a competitor    to Tillo, while still employed by Tillo.  Finally, Heffernan and Talli misappropriated Tillo's valuable trade secrets in order to give Talli a head start in competing with Tillo.

2

5.      Defendants' conduct is egregious and unlawful.  Tillo has been damaged due to Defendants' improper and unlawful conduct in a substantial amount as yet to be calculated, and seeks, *inter alia*, an award of damages, equitable relief, disgorgement and the imposition of a constructive trust, and other relief as set forth more fully below.

## THE PARTIES

6.      Plaintiff Tillo Inc, is a corporation organized and existing under the laws of Delaware with its principal place of business at Penn Field, Suite C304, 3601 S. Congress Ave, Austin, Texas 78704.

7.      Plaintiff Reward Cloud Limited is a private limited company organized and existing under the laws of the United Kingdom with its principal place of business at Unit 14 Hove Business Centre, Fonthill Road, Hove, England, BN3 6HA.

8.      Plaintiff Tillo Inc. is a wholly owned subsidiary of Plaintiff Reward Cloud Limited.  Collectively, Plaintiffs do business under the TILLO® brand name.

9.      Upon information and belief, Defendant Robert Heffernan is a resident of the United Kingdom, residing at Sammi Cottage, 20 Boxall Road, Dulwich Village, London  SE21 7JS.

10.      Upon information and belief, Defendant Talli Digital Payments, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 169 Madison Ave., Suite 11286, New York, New York 10016.

11.      Upon information and belief, Heffernan is the Co-Founder and CEO of Talli.

## JURISDICTION AND VENUE

12.     This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. and New York common law, breach of contract, unfair competition, breach of fiduciary duty, and conversion.

13.     This Court has jurisdiction over the claims made in this Complaint under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*, and under the Judicial Code of the United States, 28 U.S.C. §1331, §1332 and §1338. Jurisdiction is also provided under 28 U.S.C. §1367(a). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1391 (b) and (c) because those claims are so related to their federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

14.     This Court has personal jurisdiction over Defendant Talli because it has a principal place of business in New York and therefore resides in New York, and also because Talli has committed acts in this judicial district, as further described below, that have caused injury to Plaintiffs.

15.     This Court has personal jurisdiction over Defendant Heffernan because, upon information and belief, a substantial number of Defendant's acts committed within or directed toward the Southern District of New York have caused injury to Plaintiffs.  In particular, Defendant Heffernan has committed at least misappropriation of trade secrets, unfair competition, and breach of his fiduciary duty through the founding Defendant Talli in this district.

16.     In particular, upon information and belief, Defendant Heffernan's contacts with this District in engaging in a competing business to Tillo that is headquartered here, including through use of Tillo's proprietary and trade secret information,  gives rise to personal jurisdiction

4

because it has sufficient minimum contacts with the forum such that exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice. Defendant Heffernan has purposefully availed himself of the privilege of doing business in the forum by exercising supervision and control of Talli as its Founder and CEO, and there is a nexus between such acts and the asserted claims. Specifically, Defendant Heffernan has committed at least misappropriation of trade secrets, unfair competition, and breach of his fiduciary duty through the founding and/or operating of Defendant Talli in this District.

17.     Venue is conferred in accordance with 28 U.S.C. §1391 because a substantial part of the acts complained of took place in the Southern District of New York and a substantial part of the property that is the subject of this action is situated here.

### FACTUAL BACKGROUND

### Heffernan's Employment with Tillo

18.     Heffernan began his employment with Tillo on May 2, 2023.

19.     The final day of Heffernan's employment for Tillo was April 16, 2024.

20.     During his entire tenure with Tillo, Heffernan's title was Vice President of Product.

21.     As Vice President of Product, Heffernan, was a member of the Senior Leadership Team ("SLT") and reported directly to Tillo's CEO, Alex Preece.

22.     During his entire tenure with Tillo, Heffernan's job responsibilities included leading Tillo's product team in the research, development, and commercialization of Tillo's product offerings, including Tillo's core product offerings in the closed-loop gift card market.

23.     Additionally, Heffernan was responsible for the further development of Tillo's "open-loop" product, which is marketed under the name RewardPass.

24.     Traditional gift cards are known as "closed-loop" cards, and they can only be used at a single retailer or chain of retailers or a single brand.  In contrast, "open-loop" gift cards are not tied to a specific retailer or brand, but rather a payment processing company such as Visa® or MasterCard®, and are therefore accepted wherever that company's credit cards are accepted. Tillo operates in both the closed-loop and open-loop gift card markets.

25.     As part of his role at Tillo, including as a trusted member of the SLT, Heffernan had access to, and helped to develop, commercially sensitive information regarding Tillo's closed-loop and open-loop products, including but not limited to processes and procedures, pricing, margins, customers, potential markets, and key vendors.

26.     Heffernan's employment was governed by a Contract of Employment ("the Employment Agreement"), dated May 2, 2023.  Heffernan executed the employment agreement on May 4, 2023, and it was executed by Tillo on May 9, 2023.  A true and correct copy of the Employment Agreement is attached hereto as Exhibit A.

27.     The Employment Agreement stated that Heffernan's employer was Reward Cloud Limited.

28.     The Employment Agreement stated that Heffernan was to directly report to Alex Preece, the CEO of Tillo.

29.     Pursuant to Section 2.3 of the Employment Agreement, Heffernan was required to "devote the whole of [his] working time, attention and abilities to the business of" Tillo.

30.     Also pursuant to Section 2.3 of the Employment Agreement, Heffernan agreed to obtain prior consent from Mr. Preece before undertaking any employment outside of his role at Tillo:

> 2.3 You will, unless prevented by ill health, devote the whole of your working time, attention and abilities to the business of the Company. You shall not work for anyone else during the hours you are working for the Company. If you are offered employment with anyone else, outside of your working hours with the Company, you must obtain prior consent from Alex Preece, CEO.

*See* Exhibit A at 2.

31.     Section 5.1 of the Employment Agreement set Heffernan's normal hours of work to be from 9 am to 5:30 pm local time, Monday through Friday, with a one hour lunch break.

32.     Pursuant to Sections 9.1 and 9.2 of the Employment Agreement, Heffernan agreed that any Intellectual Property conceived or generated by him during the course of his work, regardless of whether inside or outside normal working hours, was the property of Tillo.

> 9.1 You acknowledge that you might conceive or generate Intellectual Property during the course of your work (whether alone or with others, whether in the course of performing your duties in the course of your employment, and whether inside or outside normal working hours) and you shall disclose promptly to the Company all such details of all Intellectual Property.
>
> 9.2 All right, title and interest in and to such Intellectual Property belongs to the Company and
>
> you hereby irrevocably assign to the Company (or to such other person as the Company may direct) by way of present assignment of all your current and future rights, titles and interests in and to such Intellectual Property, and irrevocably waive all moral rights in it (in so far as you can lawfully do so).

33.     Section 9.3 of the Employment Agreement defined "Intellectual Property" to include a variety of types of intellectual property, including but not limited to rights in confidential information, which includes know-how and trade secrets:

> 9.3 For the purposes of this clause 9, Intellectual Property means patents, rights to inventions, copyright and related rights, trademarks, trade names and domain names, rights in get-up, rights in goodwill or to sue for passing off, rights in designs, rights in computer software, database rights, rights in confidential information (including know-how and trade secrets) and any other intellectual property rights, in each case whether registered or unregistered and including all applications (or rights to apply) for, and renewals or extensions of, such rights and all similar or equivalent rights or forms of protection which may now or in the future subsist in any part of the world.

34.     Pursuant to Section 10.1 of the Employment Agreement, Heffernan agreed to certain restrictive covenants in order to "protect the Confidential Information and business connections of the Company to which" he had access to as a result of his employment.

35.     Also pursuant to Section 10.1 of the Employment Agreement, Heffernan committed not to "be involved in any Capacity with any business concern which is (or intends to be) in competition with" Tillo.

36.     Pursuant to Section 15 of the Employment Agreement, Heffernan agreed to keep confidential any information of Tillo's that is not within the public domain.  This obligation extended past the termination of his employment, and covered, *inter alia*, "corporate and marketing strategy, business development and plans, audit reports and research."

**15 Confidential Information**

15.1 You shall not use or disclose to any person either during or at any time after your employment with the Company any information (whether or not recorded in documentary form, or stored on any magnetic or optical disk or memory) relating to the business, products, affairs and finances of the Company confidential to the Company or any of its clients or contacts and trade secrets including, without limitation, technical data and know-how relating to the business or the business contacts the Company. For the purposes of this clause 15, **confidential information** means any information or matter which is not in the public domain (except as a result of your breach of this agreement) including but not limited to:

(a) lists of clients, business contacts and suppliers and details of contracts with them in relation to the business of the Company;

(b) profit margins, expenditure levels and charging policies including details of fees or

profits;

(c) contracts, transactions and negotiations to the extent that they relate to both the potential and actual business of the Company; and

(d) corporate and marketing strategy, business development and plans, audit reports and research.

37.    The terms of the Employment Agreement governed Heffernan's employment at Tillo at all times during his tenure with Tillo.

38.    On or about April 16, 2024, Heffernan resigned from Tillo.

### Heffernan's Improper Work for Other Business Ventures

39.    Throughout his employment with Tillo, Heffernan was secretly engaged in work for other entities that was not disclosed to Tillo, nor did Heffernan seek approval for this work as required by Section 2.3 of the Employment Agreement.

40.    On information and belief, during the period of his employment for Tillo, Heffernan was also employed by a company he founded called SingleStep Ventures.

41.    Upon information and belief, SingleStep Ventures was a property redevelopment firm based in Ireland.

42.    On his LinkedIn page, Heffernan lists his role at SingleStep Ventures to be "Founder & Director."  A true and correct copy of Heffernan's LinkedIn page, accessed at https://www.linkedin.com/in/rob-heffernan-b3296611a/ on December 18, 2024, is attached hereto as Exhibit B.

43.    Further, Mr. Heffernan lists his role at SingleStep Ventures to be "full-time" from January 2011 to the present (including as of the filing of this Complaint), a time period that overlaps with the entire period of Mr. Heffernan's employment at Tillo.



9

44.    On information and belief, Heffernan also devoted significant time during his employment at Tillo, including during normal Tillo work hours, to the establishment of his start-up business venture, Talli.

45.    Like Tillo, Talli is a company focusing on providing business-to-business ("B2B") services to its clients such as gift cards (closed-loop cards) and prepaid cards (open-loop cards).  Such clients use these cards as part of their offering to their customers or end users - for example, their customers or end users are given the option of receiving value in gift cards or as a prepaid card.

46.    Upon information and belief, Talli has targeted a market segment relating to providing payment to class members in large class action lawsuits.  Talli's target clients are law firms or claims administrators who want to offer class members the option to receive the settlement award in the form of a prepaid card or gift card.

47.    While Heffernan was employed at Tillo, Tillo investigated and undertook initial steps to potentially enter the legal/class action settlement gift card market.  Tillo's investigation into this market was undertaken in part by Heffernan, who was specifically asked to evaluate this segment for potential Tillo business opportunities.

48.    While an employee, Vice President, and/or fiduciary of Tillo, Heffernan devoted substantial time and effort, including but not limited to during normal Tillo work hours, to research and other tasks in furtherance of his work for SingleStep Ventures and his start-up business that became Talli.

49.    In furtherance of his work for both SingleStep Ventures and Talli, Heffernan sent at least several dozens of emails between his Tillo email account (rob.heffernan@tillo.io) and

three other non-Tillo email accounts: rob@singlestep.ventures, robertHeffernan@gmail.com, and rob@talli.io.

50.     Heffernan engaged in work on behalf of SingleStep Ventures and/or on behalf of what became his start-up company, Talli, almost immediately upon commencing work for Tillo in early May 2023.

51.     Starting on May 5, 2023, Heffernan began sending emails between his Tillo email account and his SingleStep Ventures email account, including     during Heffernan's normal business hours at Tillo.

52.     Several of these emails, such as emails from his Tillo email account to his SingleStep Ventures email account, relate to issues of property investment or improvement relevant to his role at SingleStep Ventures, but completely unrelated to his role at Tillo.

53.     For example, on May 12, 2023, Heffernan forwarded from his SingleStep Ventures account to his Tillo account a Zoom link to a Virtual Property Exhibition scheduled to take place that day at 9:15 AM London time.

54.     Upon information and belief, this exhibition was relevant to his role at SingleStep Ventures, and he attended it during the workday when he was otherwise required to devote his full time to his Tillo work.

55.     On August 1, 2023, Heffernan forwarded from his Tillo account to his SingleStep Ventures account a link to the website of Garrett Peers, a self-described "seasoned property expert with over 25 years of experience" based in Dublin.  Upon information and belief, Heffernan had been conducting research related to the work of SingleStep Ventures, and not Tillo, prior to sending himself this August 1, 2023 email.

56.     On August 14, 2023, Heffernan forwarded from his Tillo account to his SingleStep Ventures account a link to an Irish Times article regarding proposed developer incentives for property development. Upon information and belief, Heffernan had been conducting research related to the work of SingleStep Ventures, and not Tillo, prior to sending himself this August 14, 2023 email.

57.     On December 13, 2023, Heffernan forwarded from his Tillo account to his SingleStep Ventures account a link to a Cork news website article regarding a glut of undeveloped vacant property on the south side of Cork. Upon information and belief, Heffernan had been conducting research related to the work of SingleStep Ventures, and not Tillo, prior to sending himself this December 13, 2023 email.

58.     There are also numerous emails sent by Heffernan from one of his emails to another, including during normal work hours, relating to his work in researching and creating a new start up, which would eventually become Talli.

59.     For example, on June 28, 2023, Heffernan forwarded an email to his Tillo account from his SingleStep Ventures that included a meeting invite regarding a "Black Rainbow Founder Presentation."  The meeting invite was sent by Jack O'Connell, and copied John Halpin and Aidan Kehoe.

60.     On information and belief, O'Connell and Kehoe are co-founders and investors in Talli.

61.     On information and belief, this meeting, which occurred during normal Tillo business hours when Heffernan was required to devote his full time and efforts to the interests of Tillo, related to the founding of Talli.

62.     A second email from Heffernan's SingleStep Ventures account also sent on June 28, 2023 included an attachment titled "Black Rainbow.pdf," which, upon information and belief, is a framework for analyzing a potential start up opportunity.  This email did not pertain to the business of Tillo.

63.     On September 4, 2023, Heffernan forwarded from his Tillo account to his SingleStep Ventures account an email containing a link to scalewise.com, a company that on information and belief helps start-ups scale up in size and develop a product that reaches market. This email did not pertain to the business of Tillo.

64.     By way of further example, on September 7, 2023, Heffernan forwarded from his Tillo account to his SingleStep Ventures account an email that set forth a list of potential start-up ideas.  The start-up ideas included links to companies in the real estate services industry and various closed-loop gift card companies.

65.     Between September 18, 2023 and December 19, 2023, Heffernan sent several emails from his Tillo account to his SingleStep Ventures account related to start-up funding and payment processing, as well as an email about class action settlements.  Some or all of these emails were sent during normal business hours, and on information and belief all were sent to his SingleStep Ventures account because of their relevance to Heffernan's start-up.

66.     On Upon information and belief, Heffernan had been conducting research related to the creation, development and execution of a start-up company that became Talli while employed by Tillo, including during normal Tillo work hours and including during a time period when Heffernan was required to fully devote his professional efforts to the promotion of Tillo's business interests.

67.     On information and belief, Heffernan caused articles of incorporation for Talli to be filed in Delaware on January 9, 2024, while he was still employed by Tillo.

68.     Records from the Delaware Department of State, Division of Corporations show that Talli Digital Payments, Inc. was incorporated on January 9, 2024, and assigned File Number 2906237.  A true and correct copy of the entity details for Talli Digital Payments, Inc. is attached hereto as Exhibit C.

69.     Shortly after this, Heffernan began to email his Tillo account from his Talli email account as well, and the volume of emails sent between Heffernan's various email accounts related to the new start up increased.

70.     Examples of these emails include interview notes for interviewing new engineering candidates for Heffernan's start up, as well as information regarding travel and preparation for meetings with potential investors (and eventual co-founders) of Talli.

71.     On April 9, 2024, two days before Heffernan announced his resignation from Tillo, he sent from his Tillo account to his SingleStep Ventures account a confidential presentation that had been prepared for Tillo by Virtual Incentives, a vendor that Tillo uses.  This presentation contained significant detail about the provision of open-loop cards in the United States market.  On information and belief, Heffernan sent this presentation to his SingleStep Ventures account in order to be able to use it in his Talli business.

72.     These emails demonstrate that Heffernan devoted time and effort to the development and promotion of Talli while still employed by Tillo, including but not limited to during normal Tillo work hours.

73.     These emails demonstrate that Heffernan did not devote his full time, effort, and attention to the promotion of Tillo's business interests while he was employed by Tillo.

14

## Defendants Misappropriate Tillo Trade Secrets

74.     During his employment at Tillo, and by virtue of his high-ranking position of trust and confidence within the company, Heffernan had access to Tillo's confidential and proprietary information, including but not limited to business plans and business models, market strategies, procedures, pricing, margins, customer lists, and contacts at key vendors.

75.     Tillo undertook reasonable efforts to keep this confidential and proprietary information secret.  All Tillo employees with access to confidential information were required to sign employment agreements with confidentiality provisions, such as the Employment Agreement that Heffernan signed.

76.     Tillo did not share any of its confidential or proprietary information outside the company without a non-disclosure agreement in place.

77.     Following Heffernan's termination from Tillo, Tillo has learned, including from Heffernan's email history, that Heffernan misappropriated Tillo's confidential, proprietary, and/or trade secret information.

78.     For example, it is apparent from a June 15, 2023 email that Heffernan took a photograph on his phone of  an internal Tillo whiteboard upon which was written non-public, proprietary technical details regarding how Tillo's product works.  Upon information and belief, Heffernan did not delete that photograph after his termination from Tillo.

79.     Upon information and belief, Heffernan is still in possession of, and has made and continues to make improper use of, including for the benefit of and on behalf of Talli, the confidential, proprietary and/or trade secret information set forth on the whiteboard and contained in the photograph taken by Heffernan.

80.     Heffernan also took one or more photos of notebook pages that contained confidential, proprietary and/or trade secret information regarding Tillo's products, including product development status and roadmaps, copies of process drawings created by CEO Alex Preece, and other non-public information about product positioning.

81.     On June 29, August 2, September 5, Heffernan emailed himself photos of the above-referenced internal handwritten notebook pages.

82.     Upon information and belief, Heffernan did not delete the notebook page photograph(s) after his termination from Tillo.

83.     Upon information and belief, Heffernan is still in possession of, and has made and continues to make improper use of, including for the benefit of and on behalf of Talli, the confidential, proprietary and/or trade secret information contained in the notebook photograph(s) taken by Heffernan.

84.     On or about July 31, 2023 Heffernan emailed from his Tillo account to his SingleStep Ventures email address a detailed Tillo product roadmap that set forth the confidential, proprietary and trade secret steps and processes that Tillo uses to develop its products, as well as information concerning the processes and procedures used to support its product offerings.

85.     Heffernan had access to the above-referenced  product roadmap as well as other confidential, proprietary or trade secret information because he was a key, trusted employee with a position on Tillo's Senior Leadership Team.

86.     Upon information and belief, Heffernan kept and took with him this roadmap after his termination from Tillo.

16

87.     Upon information and belief, Heffernan is still in possession of, and has made and continues to make improper use of, including for the benefit of and on behalf of Talli, the confidential, proprietary and/or trade secret information contained in the roadmap taken by Heffernan.

88.     Upon information and belief, Heffernan learned of the class action settlement market segment that Talli currently targets—including the use of closed-loop and open-loop cards in class action settlement payments—through his employment for Tillo because it was a market segment that Tillo was studying and Heffernan had specifically been assigned to investigate this segment for Tillo.  Instead of using that information solely on behalf of and in the furtherance of his duties at Tillo, Heffernan used this information for his own benefit and for the benefit of Talli, who also made improper use of this information.

89.     Collectively, the confidential, proprietary and/or trade secret information of Tillo that was taken by Heffernan and, upon information and belief, used by Talli, provided important information that allowed Heffernan and Talli to gain unfair advantages in starting a competing business more quickly and less expensively than would have been possible without this information.

90.     For example, upon information and belief Talli completed a funding round in December of 2023 in which it raised $4 million in investments for its business.  A true and correct copy of a press release announcing the results of the Talli's fundraising campaign, published on https://finance.yahoo.com/news/talli-closes-4-million-seed-173600703.html and accessed on December 23, 2024, is attached hereto as Exhibit D.

91.     Upon information and belief, Talli would not have been able to raise these funds, including within the time period after Heffernan's departure from Tillo, without the use of

Tillo's confidential, proprietary, and/or trade secret information that was misappropriated by Heffernan and Talli.

92.     The information wrongfully taken by Heffernan, and wrongfully used by Talli, is information that is kept secret by Tillo, and would cause Tillo a great commercial disadvantage if it were to be disclosed to others.

93.     Upon information and belief, Heffernan has used and continues to use the confidential, proprietary, and/or trade secret information that he has wrongfully taken from Tillo and applied it to his new venture at Talli, and Talli is aware of and has used and benefited from this misappropriation.

**<u>Harm to Plaintiffs</u>**

94.     Plaintiffs have been harmed by the actions of Defendants as described above, at least to the extent that: (a) Tillo did not get the benefit of its bargain with Heffernan, in that Tillo fully compensated Heffernan as agreed, but in exchange Heffernan did not devote his full time, attention and efforts, including but not limited to during regular Tillo business hours, to the advancement or promotion of Tillo's business interests; (b) Heffernan and Talli's improper misappropriation and use of Tillo's confidential, proprietary and/or trade secret information allowed Defendants to quickly build a competitor business to Tillo, including but not limited to the extent that Talli has targeted a market segment for which Tillo was developing a product, and which allowed Talli to get a first mover advantage in the settlement payment market segment, undercutting Tillo's efforts to launch its own product in this segment; and (c) the creation and launch of Talli using Tillo's confidential, proprietary and/or trade secret information, including but not limited to the extent that such efforts were undertaken by Heffernan while employed by and being paid by Tillo, has caused Tillo significant financial damage.

<u>**COUNT I**</u>
**Violation of the Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq***
***Against All Defendants***

95.     Plaintiffs repeat and reallege Paragraphs 1-94 as though fully set forth herein.

96.     During the course of about May 2023-April 2024, and continuing thereafter, Defendants had access to and thereafter misappropriated and/or continued to misappropriate Plaintiffs' valuable confidential, proprietary and/or trade secret information (hereafter, "Trade Secrets"), including but not necessarily limited to as described above.

97.     Plaintiffs' valuable confidential, proprietary and/or trade secret information that was misappropriated by Defendants relates to products and/or services that are used in interstate or foreign commerce.

98.     At all times relevant hereto, Plaintiffs took reasonable measures to maintain the confidentiality and/or secrecy of Plaintiffs' Trade Secrets.

99.     At all times relevant hereto, Plaintiffs derived independent economic value from the confidentiality and secrecy of the confidential, proprietary, and/or trade secret information of Plaintiffs that was misappropriated by Defendants.

100.     Plaintiffs confidential, proprietary, and/or trade secret information, as described herein, was not and is not readily ascertainable by others without use of improper means.

101.     Without Plaintiffs' consent or knowledge, Defendants downloaded, photographed, emailed, and/or otherwise captured and took and/or otherwise used Plaintiffs' Trade Secrets for their own use and financial gain and to Plaintiffs' harm and detriment.

102.     Defendants have derived and/or obtained economic value from its improper and unauthorized use of Plaintiffs' confidential, proprietary and/or trade secret information.

103.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed as heretofore alleged  and have suffered significant injury and harm, including but not limited to monetary damages .

104.     Defendants' conduct was willful, wanton, and outrageous thereby justifying the award of punitive damages.

105.     Defendant's acts constitute misappropriation of trade secrets under 18 U.S.C. § 1836 *et seq*.

106.     Upon information and belief, Defendant has acted intentionally, maliciously, willfully, and in bad faith.

<u>**COUNT II**</u>
**Misappropriation of Trade Secrets**
***Against All Defendants***

107.     Plaintiffs repeat and reallege Paragraphs 1-106 as though fully set forth herein.

108.     During the course of about May 2023-April 2024, and continuing thereafter, Defendants had access to and thereafter misappropriated and/or continued to misappropriate Plaintiffs' valuable confidential, proprietary and/or trade secret information, including but not necessarily limited to as described above, which are used in connection with interstate commerce.

109.     Plaintiffs' valuable confidential, proprietary and/or trade secret information that was misappropriated by Defendants relates to products and/or services that are used in interstate or foreign commerce.

110.     At all times relevant hereto, Plaintiffs exercised reasonable efforts to maintain the confidentiality and secrecy of its product, pricing, processes, market strategy, and customer details, all of which constitute "trade secrets" under New York law.

111.    Tillo's business plans and business models, market strategies, procedures, pricing, margins, customer lists, and contacts at key vendors are all proprietary and confidential information and trade secrets that are the legal property of Plaintiffs.

112.    At all times relevant hereto, Plaintiffs derived independent economic value from the confidentiality and secrecy of the confidential, proprietary, and/or trade secret information of Plaintiffs that was misappropriated by Defendants.

113.    Plaintiffs' confidential, proprietary, and/or trade secret information, as described herein, was not and is not readily ascertainable by others without use of improper means.

114.    Defendants' action and conduct constitute theft and misappropriation of Plaintiffs' confidential and/or proprietary information and trade secrets.

115.    Heffernan conspired with Talli to carry out all of the above illegal and deceptive actions to the detriment of Plaintiffs.

116.    Defendants, either directly or through the actions of others, willfully and maliciously misappropriated Plaintiffs' trade secrets in violation of New York common law.

117.    Defendants have derived and/or obtained economic value from its improper and unauthorized use of Plaintiffs confidential, proprietary and/or trade secret information.

118.    By reason of Defendants' misappropriation, Plaintiffs have suffered significant injury and harm, including but not limited to monetary damages.

119.    As a direct and proximate result of Defendants' willful and malicious misappropriation of trade secrets, Plaintiffs have sustained and—if Defendants are not enjoined—will continue to sustain substantial damages.

120.    Defendants have been unjustly enriched as a result of their misappropriation of Plaintiffs protected trade secrets.

121.    Because Defendants' acts of misappropriation were both willful and malicious, Plaintiffs are entitled to an award of punitive damages and attorneys' fees.

**COUNT III**
**Breach of Contract**
*Against Heffernan*

122.    Plaintiffs repeat and reallege Paragraphs 1-121 as though fully set forth herein.

123.    The Employment Agreement constituted a valid and enforceable agreement between Tillo and Heffernan.

124.    Heffernan breached at least Section 2.3 of the Employment Agreement by working for or on behalf of entities other than Tillo during the periods of time that he should have been working for, on behalf of, and in the interest of Tillo.

125.    Heffernan further breached Section 2.3 at least by working for entities other than Tillo without prior consent from Alex Preece, CEO of Tillo.

126.    Heffernan breached Section 10.1 of the Employment Agreement at least by researching, developing, and/or founding and working for and on behalf of Talli both during his employment with Tillo and also within 6 months of the termination of his employment with Tillo.

127.    Heffernan breached Section 15 of the Employment Agreement at least by disclosing Tillo's confidential information, as defined in Section 15, to Talli.

128.    Each of these breaches constitutes a material breach of the Employment Agreement.

129.    By reason of Heffernan's breach, Tillo was harmed as alleged in this Complaint and is entitled to monetary relief in an amount to be determined at trial.

## <u>COUNT IV</u>
### Breach of Fiduciary Duty
### *Against Heffernan*

130.    Plaintiffs repeat and reallege Paragraphs 1-129 as though fully set forth herein.

131.    Heffernan, as a Vice President of Product for Tillo, in charge of Tillo's product teams, owed a fiduciary duty to Plaintiffs related to his role.

132.    Heffernan's actions and conduct in placing the business interests of his other ventures, including SingleStep Ventures as well as the research, development and founding of Talli, above Tillo's business interests while serving as an employee, manager, or other fiduciary of Plaintiffs constitute a breach of Heffernan's fiduciary duty of loyalty to Tillo.

133.    Heffernan's actions were intentionally undertaken with knowledge that they would financially harm Tillo, but were nevertheless done while Heffernan still worked for Tillo to advance the interests of Heffernan and Talli at Tillo's expense.

134.    Plaintiffs placed Heffernan in a position of trust and confidence regarding Tillo's product development and marketing, yet Heffernan breached that confidence and trust to Plaintiffs' detriment.

135.    These breaches have caused and continue to cause Plaintiffs significant damage.

136.    As a direct and proximate result of Heffernan's breach of his fiduciary duty, Plaintiffs have incurred substantial damages in an amount to be determined at trial, together with interest, costs, and disbursements thereon.

137.    Heffernan's breach was intentional, willful, and malicious, thus justifying the award of punitive and/or exemplary damages.

**COUNT V**
**Conversion**
*Against All Defendants*

138.    Plaintiffs repeat and reallege Paragraphs 1-137 as though fully set forth herein.

139.    As described above, Defendants converted to their own use and benefit Plaintiffs physical, electronic, tangible, and intangible property without authorization to Plaintiffs' harm and detriment.

140.    As a direct and proximate result of Defendants' conversion, Plaintiffs have incurred substantial damages in an amount to be determined at trial, together with interest, costs, and disbursements thereon.

141.    Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive and/or exemplary damages.

**COUNT VI**
**Common Law Unfair Competition**
*Against All Defendants*

142.    Plaintiffs repeat and reallege Paragraphs 1-141 as though fully set forth herein.

143.    Defendants unlawfully misappropriated Plaintiffs property rights in order to obtain an unfair competitive advantage over Plaintiffs in the marketplace.

144.    By reason of Defendants' unfair competition, Plaintiffs have suffered significant monetary damages.

145.    As a direct and proximate result of Defendants' unfair competition, Plaintiffs have sustained, and—if Defendants are not enjoined—will continue to sustain substantial damages.

146.    Defendants have been unjustly enriched as a result of their acts of unfair competition.

147.    Because Defendants' acts of unfair competition were both willful and malicious, Plaintiffs are entitled to an award of punitive damages and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to enter judgment in their favor and against Defendants, including Defendant Talli's respective subsidiaries, successors, parents, affiliates, officers, directors, agents, founders, servants and employees, and all persons in active concert or participation with Defendants, granting the following relief:

A.    The entry of judgment in favor of Plaintiffs and against Defendants on Count I, finding that Defendants misappropriated Plaintiffs' trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*;

B.    The entry of judgment in favor of Plaintiffs and against Defendants on Count II, finding that Defendants misappropriated Plaintiffs' trade secrets in violation of New York Common Law

C.    The entry of judgment in favor of Plaintiffs and against Defendant Heffernan on Count III, finding that Defendant Heffernan breached the Employment Agreement;

D.    The entry of judgment in favor of Plaintiffs and against Defendant Heffernan on Count IV, finding that Defendant Heffernan breached a fiduciary duty he owed to Tillo;

E.    The entry of judgment in favor of Plaintiffs and against Defendants on Count V, finding that Defendants converted for their own use and benefit a property right that belonged to Plaintiffs;

F.     The entry of judgment in favor of Plaintiffs and against Defendants on Count VI, finding that Defendants unfairly competed with Plaintiffs by virtue of their misappropriate of Plaintiffs' trade secrets;

G.     That the Court grant injunctive relief in favor of Tillo requiring that Defendants cease all use of or other reliance upon, in any manner, any and all Tillo confidential, proprietary, and /or trade secret information, including but not limited to in connection with the business of Talli;

H.     That the Court grant injunctive relief in favor of Tillo requiring Defendants to return to Tillo any and all Tillo confidential, proprietary, and/or trade secret information;

I.     Damages in an amount to be determined at trial in this matter including but not limited to lost profits, disgorgement of Defendants profits, recovery of money paid to Heffernan to a period where he was in breach of the Employment Agreement, and any other damages lawfully available for lost sales or business opportunities during the period in which Defendants misappropriated Plaintiffs' trade secrets and/or were otherwise unjustly enriched due to their wrongful acts as alleged herein;

J.     Punitive and exemplary damages in an amount to be determined at trial in this matter

K.     Interest, costs, attorney's fees, and expert fees;

L.     Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and any other benefits received by reason of the unlawful conduct;

M.      Any such other relief to Plaintiffs as this Court deems appropriate, just, and

proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: December 23, 2024                    Respectfully submitted,


By: /s/ *Steven M. Coyle*
Steve Coyle, Esq. (SC0730)
Nicholas Geiger, Esq. (*pro hac* pending)
CANTOR COLBURN LLP
20 Church Street, 22nd floor
Hartford, CT 06103
Phone:  (860) 286-2929
Fax:  (860) 286-0115
scoyle@cantorcolburn.com
ngeiger@cantorcolburn.com

*Attorneys for Tillo Inc. and Reward Cloud Limited*